# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE MARTIN SMITH,**<br><br>     DEBTOR.<br>_____<br><br>**INTERNAL REVENUE SERVICE,**<br><br>     APPELLANT,<br><br>**V.**<br><br>**MARTIN SMITH,**<br><br>     APPELLEE. | Case No.: 13-CV-871 YGR<br><br>Bankruptcy Case No. 11-73272 RLE<br>Adversary Proceeding No. 12-4086<br><br>**ORDER REVERSING DECISION OF BANKRUPTCY COURT; DENYING DEBTOR'S MOTION TO STRIKE (DKT. NO. 20)** |

      This is an appeal by the Internal Revenue Service ("IRS") from the Order Granting Debtor Martin Smith's ("Debtor") Request for Summary Judgment and Denying IRS's Motion for Summary Judgment, entered by the Bankruptcy Court on January 31, 2013, and more fully explicated on the record on January 8, 2013. IRS filed a Notice of Appeal on February 14, 2013, as well as a statement of election to have the United States District Court for the Northern District of California hear its appeal of the Order. *See* 28 U.S.C. 158(c)(1)(A), Fed. R. Bankr. P. 8001(e), and 9th Cir. B.A.P. L.R. 8001(e)-1. The controversy stems from the treatment, for bankruptcy

purposes, of a Form 1040 submitted seven years after it was due and three years after the IRS made an assessment and commenced collection proceedings.

Having carefully reviewed the record of the proceedings in this matter, the legal determinations in the Bankruptcy Court's decision, and the parties' briefing, the Court is persuaded the approach used in a majority of the circuits across the United States in their treatment of late-filed tax returns is the appropriate method of resolving this issue presented. Accordingly, with respect to the facts presented here, the Court **REVERSES** the Bankruptcy Court's January 31, 2013 Order and **REMANDS** for further proceedings consistent with this Decision.

## I. STATEMENT OF THE FACTS

Debtor filed a voluntary petition under Chapter 7, Title 11, of the United States Code on December 22, 2011. The Court issued a discharge order on May 11, 2012. The only year at issue in this adversary proceeding is 2001, a year for which Debtor did not file an income tax return timely. The IRS sent Debtor a letter requesting that he file an income tax return for 2001, but Debtor failed to do so. The IRS then began an examination regarding Debtor's liability for the 2001 tax year and determined his tax liability for 2001 based on information gathered from third parties. After making its determination, the IRS prepared a "substitute for return" (or "SFR") pursuant to 26 U.S.C. § 6020(b) for 2001.

On March 27, 2006, the IRS mailed a notice of deficiency to Debtor for the 2001 tax year showing the IRS's determination of tax liability of $70,662. Debtor had ninety days from March 27, 2006, to challenge the notice of deficiency by filing a petition with the United States Tax Court. Debtor filed no such challenge. On July 31, 2006, the IRS assessed the $70,662 tax liability and began collection activities.

On May 22, 2009—over seven years after Debtor's 2001 tax return was due, over three years after the IRS had determined Debtor's tax liability for 2001, and after the IRS had already initiated collection activity on the debt—Debtor submitted a Form 1040 for the 2001 tax year, reporting a higher tax liability than the IRS previously had determined ("the Return at Issue").[1] He

---

[1] Based on this Form 1040, the IRS assessed an additional tax liability of $40,095. The IRS does not contend that this $40,095 liability, or the associated penalties, is non-dischargeable.

thereafter filed his bankruptcy petition on December 22, 2011. This appeal focuses on the treatment of the $70,662 tax liability assessed by the IRS in 2006, in light of the bankruptcy.

## II. DISCUSSION

### A. STANDARD OF REVIEW AND STATUTORY FRAMEWORK

In reviewing a bankruptcy court's decision, this Court functions as an appellate body and is authorized to affirm, reverse, modify or remand the Bankruptcy Court's ruling. 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8013. In this case the relevant facts are undisputed. The Bankruptcy Court's conclusions of law are subject to *de novo* review. *Miller v. United States*, 363 F.3d 999, 1003-1004 (9th Cir. 2004).

The question presented is whether Debtor's 2001 federal income tax liabilities, assessed by the IRS based upon its own examination and determination, should be (i) discharged in bankruptcy, or (ii) non-dischargeable pursuant to 11 U.S.C. section 523(a)(1)(B)(i). In general, the filing of a bankruptcy petition allows a debtor to discharge personal liability for all debts incurred prior to the filing of the petition, including unpaid taxes. 11 U.S.C. § 727(b); *see also Hatton*, 220 F.3d 1057, 1060 (9th Cir. 2000). However, Section 523(a)(1) of Bankruptcy Code sets forth certain exceptions to dischargeability identified in nineteen subsections. *See* 11 U.S.C. §523(a)(1)-(a)(19).[2] At issue here is the exception set forth in section 523(a)(1)(B) which provides:

> (a) A discharge [in bankruptcy]…does not discharge an individual debtor from any debt—
>    (1) for a tax … —
>       (B) with respect to which a return… if required—
>          (i) was not filed or given; or
>          (ii) was filed or given after the date on which such return…
> was last due, under applicable law or under any extension, and
> after two years before the date of the filing of the petition.

11 U.S.C. § 523(a)(1)(B).

---

[2] As examples, section 523 makes non-dischargeable liabilities for certain priority taxes, consumer debts on luxury goods incurred within 90 days of the order for relief, domestic support obligations, intentional torts, student loans, loans from certain pension or profit-sharing plans. See 11 U.S.C. § 523(a)(1)(A), (2)(C), (3), (5), (6), (8), (18).

3

Importantly, a precise statutory definition of the term "return" does not exist. In fact, case law abounds with colorful discussions involving the meaning of the term "return" in tax-avoider cases. While the Ninth Circuit has generally held that the meaning of "return" should be the same under the Tax Code and Bankruptcy Code, the Tax Code itself does not provide a definition of "return." *Hatton,* 220 F.3d at 1060 ("[a]lthough the I.R.C. [Internal Revenue Code] does not provide a statutory definition of 'return,' the Tax Court developed a widely-accepted interpretation of that term..."). Thus, the Ninth Circuit, relying on the seminal case of *Beard v. Commissioner,* 82 T.C. 766, 774–79, 1984 WL 15573 (1984), *aff'd,* 793 F.2d 139 (6th Cir.1986)), held that whether a "document" is considered a "return" for statute of limitations purposes depends upon four elements. *Hatton,* 220 F.3d at 1060-61. Those elements, as stated in *Beard,* are:

> First, there must be sufficient data to calculate tax liability; second, the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute the return under penalties of perjury.

*Beard,* 82 T.C. at 777 (relying on the definition of "return" established by the Supreme Court in *Germantown Trust Co. v. Commissioner,* 309 U.S. 304 (1940), and *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172 (1934)).[3]

Thereafter, in 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 119 Stat. 23 (April 20, 2005) ("BAPCPA") effective October 2005 which amended Section 523(a). For the first time, through BAPCPA, the Bankruptcy Code now provided some guidance on the meaning of the term "return," even though it did not offer a precise definition. It did so with the inclusion of a new unnumbered paragraph at the end of the subsections 523(a)(1) through 523(a)(19). This paragraph (frequently termed the "hanging paragraph") states in pertinent part:

---

[3] Courts have variously referred to the "honest and reasonable attempt" factor as the third or fourth prong of the *Beard* test. The Court opts to refer to it as the "honest and reasonable attempt" factor for the sake of clarity while noting the discrepancy.

4

> For purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements).[4]

*Id.* Thus, the hanging paragraph codified, in part, what the Ninth Circuit stated in 2000 in *Hatton*: that the definition of "return" for purposes of bankruptcy law should be one that satisfies the requirements of non-bankruptcy law; there, the definition of "return" used under the Tax Code. *Hatton,* 220 F.3d at 1060.

### B. LEGAL ANALYSIS

Based upon the legal framework outlined above, the Court first reviews the basis for the Bankruptcy Court's decision, including the various circuits' reasoning relative to defining the term "return." The Court will then outline the parties' respective positions, and finally, set forth its own analysis of the meaning of "return" in the context of this bankruptcy appeal.

#### 1. BANKRUPTCY COURT'S DECISION

Here, the Bankruptcy Court found that the Return at Issue, filed some three years after the IRS assessed Debtor's tax liability, was properly discharged after the filing of the bankruptcy petition. In its decision, the Bankruptcy Court adopted the reasoning of another

//
//
//
//

---

[4] The hanging paragraph contains the following additional language:

> Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or similar State or local law.

Section 6020(a) refers to a return prepared by the IRS after the taxpayer fails to do so, but done with the taxpayer's consent to disclose the information necessary to prepare the return. Section 6020(b) refers to a return prepared by the IRS when the taxpayer fails to prepare a timely return or makes a false or fraudulent return, and the IRS must prepare the return based upon such information as it obtains itself.

bankruptcy court's decision, *In re Martin*, 482 B.R. 635 (Bkrtcy. D. Colorado 2012) ("*Martin I*").[5] The *Martin I* court had adopted the reasoning of *Colsen v. United States*, 446 F.3d 836 (8th Cir. 2006). The Court first notes that *Martin I* has since been reversed on appeal by a district court sitting in the Tenth Circuit. *In re Martin*, 500 B.R. 1 (D. Colo. September 23, 2013) ("*Martin II*"). Because *Martin I*'s analysis was essentially the sole basis for the underlying decision here, the Court sets forth that analysis in some detail.

*Martin I* concerned the dischargeability of (i) an IRS debt for the years 2000 and 2001, (ii) due after the IRS made an assessment in 2004, and (iii) for which the debtor submitted Forms 1040 in 2005. *Martin I*, 482 B.R. 635. The debtor argued that because Form 1040s had been filed, irrespective of the timing or the debtor's motivations, the debt was dischargeable and the plain language of section 523(a)(1)(B)(i) supported the debtor's position. Said differently, the plain language of Section 523(a) indicates that non-dischargability is required:

> (1) for a tax...
> 
> > (B) with respect to which a return...if required-
> > 
> > > (i) was not filed....

In *Martin I*, the debtor urged that because the Form 1040s *were* submitted, section 523(a)(1)(B)(i) could not be applied to prohibit discharge of this debt, even though they were untimely. The *Martin I* court agreed.

The *Martin I* court began its analysis with the question of the definition of a return. As set forth above, no controversy exists that prior to BAPCPA, the Bankruptcy Code was silent on the meaning of the word "return." The *Martin I* court thus turned its attention to the hanging

---

[5] At the January 8, 2013 hearing, the Bankruptcy Court stated:

> the Court notes for the record, after careful review of all of the cases cited on the subject, that the Court finds that Judge Campbell's decision in *In re Martin* at 482 B.R. 635, a 2012 decision out of the District of Colorado [bankruptcy court], to be the most persuasive and will follow the same. For the completeness of the record, this Court will recite the analysis set forth in the same decision….

(Record On Appeal, Exh 15 at 9:15-21, *et seq.*; *see also id.* at 18:20-15 ["I've taken the liberty of basically reading Judge Campbell's decision [in *Martin I*] into the record and cited to the same, so I think that's sufficient."].)

paragraph's language that "the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." *Martin I,* 482 B.R. at 638. The *Martin I* court reasoned that the reference to "applicable filing requirements" could not refer to regular time requirements and due dates for filing a tax return for three reasons: One, such a strict interpretation would mean that *any* late-filed return would not be a "return" for purposes of dischargeability under section 523(a)(1)(B)(i). Two, such an interpretation would render section 523(a)(1)(B)(ii) surplusage, since it sets forth a separate exception for a return filed "after such return was last due" and less than 2 years prior to the date of bankruptcy. *Martin I,* 482 B.R. at 639. Three, such an interpretation would have the effect of imposing different meanings to the term "return" as between section 523(a)(1)(B)(i) and section 523(a)(B)(ii), contrary to the normal canons of statutory construction. *Id.* Thus, the bankruptcy court in *Martin I* concluded "'[a]pplicable filing requirements' must refer to considerations other than timeliness, such as the form and contents of a return, the place and manner of filing, and the types of taxpayers that are required to file returns." *Id.* On this basis, the *Martin I* court found that the debtors' late-filed 1040s could qualify as a "return" and were properly dischargeable as they had been filed. *Id.*

The bankruptcy court in *Martin I* then turned to the more traditional approach set forth in *Beard* to determine whether a Form 1040 filed after an assessment constituted a "return." The judge outlined the 3-to-1 split in the circuits with respect to the application of *Beard*'s "honest and reasonable attempt" factor when a taxpayer files a post-assessment Form 1040. *Martin I,* 482 B.R. at 640. The Fourth and Seventh Circuits joined the Sixth Circuit in finding a post-assessment Form 1040 not to be an "honest and reasonable attempt to satisfy the requirements of the tax law." *Id.* (*citing In re Hindenlang,* 164 F.3d 1029, 1034–35 (6th Cir.1999); *In re Moroney,* 352 F.3d 902, 906 (4th Cir.2003); and *In re Payne,* 431 F.3d 1055, 1059–60 (7th Cir.2005)). In contrast, the Eighth Circuit disagreed and found the timing or subjective intent of the filer of a post-assessment Form 1040 to be irrelevant. *Colsen,* 446 F.3d at 840. The Eighth Circuit further held that this *Beard* factor should require no more than an objective determination, from the face of the form itself, of an attempt to comply, and not an "inquiry into the circumstances under which a document

was filed." *Id.*[6] The bankruptcy court in *Martin I*, citing both to *Colsen* and to Judge Easterbrook's dissent in *Payne*, reasoned that issues of the taxpayer's intent and timeliness were addressed in subsections 523(a)(1)(B)(ii) and 523(a)(1)(C)[7] and need not be incorporated into subsection (1)(B)(i). *Martin I,* 483 B.R. at 640-41.[8] On these grounds the bankruptcy court in *Martin I* found that the tax based on the post-assessment Form 1040 should be discharged, as it met the "objective" requirements of a "return" under subsection 523(a)(1)(B)(i).

//

---

[6] Other approaches, post-BAPCPA to the meaning of the term "return" for purposes of non-dischargeability have determined that: (1) state income tax returns filed late, but before any assessment by the taxing authority, qualified as "returns" under the terms of the hanging paragraph, *In re Gonzalez*, BAP MW 13-026, 2014 WL 888460 (B.A.P. 1st Cir. Mar. 6, 2014) (*Beard* factors unnecessary to the analysis); and (2) *any* untimely return fails to "satisfy applicable filing requirements" as stated in section 523(a)'s hanging paragraph. *In re McCoy*, 666 F.3d 924 (5th Cir. 2012). The result of the Fifth Circuit's reasoning in *McCoy* was to make non-dischargeable all tax debts arising from untimely returns, regardless of the reasons for the untimeliness. Neither Debtor nor the IRS espouses the *McCoy* position here, nor is the Court aware of authority in this Circuit to support that approach. *Cf. In re Martin*, 11-62436-B-7, 2014 WL 1330120 (Bankr. E.D. Cal. Mar. 31, 2014) (declining to follow *McCoy,* and adopting *Colsen* approach); *In re Pitts*, 497 B.R. 73 (Bankr. C.D. Cal. 2013) (declining to follow *McCoy*, adopting *Hindenlang/Moroney/Payne* approach); *In re Smythe*, 10-49799, 2012 WL 843435 (Bankr. W.D. Wash. Mar. 12, 2012) (declining to decide whether *McCoy* approach or *Hindenlang/Moroney/Payne* approach was correct, since debt was non-dischargeable under either test).

[7] Subsection 523 (a)(1)(C) provides:
>(a) A discharge [in bankruptcy]…does not discharge an individual debtor from any debt—
>>(1) for a tax … —
>>>(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax

11 U.S.C. §523(a)(1)(C).

[8] The bankruptcy judge in *Martin I* dismissed, as dicta, Judge Easterbrook's interpretation of the post-BAPCPA amendments to section 523(a)(1)(B) as meaning that any late-filed return would be non-dischargeable, stating that Judge Easterbrook "may have made this aside without fully considering [its] implications." *Martin I*, 483 B.R. at 641, n.5. To the contrary, it appears significant to Judge Easterbrook's dissenting view that "[a]fter the 2005 legislation, an untimely return can not [*sic*] lead to a discharge-recall that the new language refers to "'applicable nonbankruptcy law (including applicable filing requirements),'" but a document filed before those amendments could be considered a "return" and dischargeable. *In re Payne*, 431 F.3d 1055, 1060 (7th Cir. 2005).

8

### 2. SUMMARY OF PARTIES' ARGUMENTS

Appellant IRS contends the underlying decision here was based upon legal error. First, Appellant argues that section 523(a)(1)(B)(i) controls because Debtor never filed a voluntary, self-assessment tax return prior to the IRS's assessment, the money owed is and remains a tax *debt* for which no return was filed thereunder, regardless of any subsequent late-filed return by Debtor. Alternatively, IRS argues that the Court should employ the *Beard* test and the majority understanding of its "honest and genuine endeavor to comply" factor to a post-assessment Form 1040 filing. While the Ninth Circuit has not specifically ruled on this issue, under the reasoning of a majority of circuits and the Ninth Circuit's decision in *Hatton*, the IRS argues that the post-assessment Form 1040 would not constitute a "return" that "satisfies the requirements of applicable nonbankruptcy law" within the meaning of the Tax Code, and would therefore not be eligible for discharge.

For his part, Debtor contends that the approach in *Martin I*, also the Eighth Circuit's approach in *Colsen*, is the correct one. Debtor argues that the filing of a Form 1040 for the 2001 tax year, even if submitted long after the IRS assessed taxes for that year, means that the debt is dischargeable, within the plain meaning of the hanging paragraph and section 523(a)(1)(B)(ii). Debtor further argues that this "objective" approach to the definition of return, which finds compliance with the *Beard* test regardless of when the "return" is submitted, is supported by the Ninth Circuit's pre-BAPCPA decision in *In re Hatton,* 220 F.3d 1057 (9th Cir. 2000) and the Bankruptcy Appellate Panel of the Ninth Circuit in *In re Nunez,* 232 B.R. 778 (B.A.P. 9th Cir. 1999), discussed below.

### 3. ANALYSIS

The question before the Court is whether the Return at Issue constitutes a "return" for purposes of section 523(a)'s non-dischargeability provisions. The Ninth Circuit has not squarely addressed this question post-BAPCPA for purposes of section 523(a). However, the Ninth Circuit's pre-BAPCPA ruling in *Hatton* addresses the meaning of a "return" under section 523(a) in circumstances analogous to the case at bar. *Hatton,* 220 F.3d 1057. The reasoning is instructive and not undermined by the inclusion of the BAPCPA's hanging paragraph.

9

In *Hatton*, as here, the IRS prepared a substitute return on the debtor's behalf when he failed to file a federal return for one tax year. *Hatton*, 220 F.3d at 1058-59. The IRS issued an assessment, and then undertook collection activities. Hatton never denied the tax liability. Only after ignoring several delinquency notices and negotiating an installment agreement with the IRS did he begin to repay the tax debt. Prior to full repayment, Hatton filed for bankruptcy and sought discharge of the remainder owed. The question before the Ninth Circuit in *Hatton* was whether the substitute return and installment agreement satisfied the *Beard* factors and constituted a "return" for purposes of section 523(a)(1)(B)(i). *Id.* at 1059. The court found that neither document, nor the combination, satisfied the "honest and reasonable attempt" prong of the *Beard* test. *Hatton*, 220 F.3d at 1061. The court stated that "belated acceptance of responsibility… does not constitute an honest and reasonable attempt to comply with the requirements of the tax law." *Id.* Because the debtor "made every attempt to avoid paying his taxes until the IRS left him with no other choice" and "only cooperated with the IRS once collection became inevitable," the debt was not properly exempted from discharge under section 523. *Id.*[9]

Here, Debtor incorrectly contends that *Hatton* requires a court to apply the *Beard* factors as an "objective" test which does not consider the subjective intent of the debtor. To the contrary, the Ninth Circuit in *Hatton* held that debtors' tax liabilities are not dischargeable when they fail to comply with our tax system's voluntary self-assessment principles, and instead refuse to cooperate until well past the point of an assessment. *Hatton*, 220 F.3d 1057, 1061 (9th Cir. 2000). While the

---

[9] The Court notes that the Bankruptcy Appellate Panel of the Ninth Circuit, in *In re Nunez,* 232 B.R. 778 (B.A.P. 9th Cir. 1999), held that tax forms filed by a debtor years after the IRS had prepared substitute returns and assessed tax liability for the years in question could still be considered "honest and reasonable" attempts to comply with tax law, and therefore "returns" for tax dischargeability purposes. The Bankruptcy Appellate Panel in *Nunez* relied heavily on its own prior decision (*In re Hatton*, 216 B.R. 278 (B.A.P. 9th Cir. 1997). That decision was later reversed by the Ninth Circuit Court of Appeals in *In re Hatton*, 220 F.3d 1057, 1061 (9th Cir. 2000). Thus, the holding in *In re Nunez* is, at least arguably, implicitly overruled by the Ninth Circuit's decision in *Hatton*, 220 F.3d 1057. At a minimum, the cases may be harmonized on the reasoning that "each case should be reviewed on an individual basis" and the debtor given the opportunity to "make a specific factual showing that his or her late submissions were a reasonable attempt to comply with the tax law." *In re Rushing*, 273 B.R. 223, 227 (Bankr. D. Ariz. 2001) (declining to find the Ninth Circuit overruled *In re Nunez* in *Hatton*).

other three *Beard* factors are based on objective, face-of-the-documents considerations, the "honest and reasonable attempt" factor necessarily involves an individualized review of the equities. Thus, Debtor's argument that the Ninth Circuit's "only problem with the taxpayer seeking to discharge the liability was that the taxpayer never actually filed a return" (Appellee's Opening Brief at 14:24-25) simply disregards the reasons stated in *Hatton* for finding non-dischargeability.

Likewise, a majority of the federal circuit courts have held that a late-filed, self-assessment Form 1040 does not constitute a "return" that "satisfies the requirements of applicable nonbankruptcy law" because it is not an "honest and reasonable attempt to comply with the tax law." *Hindenlang,* 164 F.3d 1029, 1034–35 (6th Cir. 1999); *In re Moroney,* 352 F.3d 902, 906 (4th Cir. 2003); *In re Payne,* 431 F.3d 1055, 1059–60 (7th Cir. 2005); *see also In re Wogoman*, No. BR 11-11044-SBB, 2011 WL 3652281 (Bankr. D. Colo. Aug. 19, 2011) *aff'd,*475 B.R. 239 (10th Cir. B.A.P. 2012) (interpreting hanging paragraph and the Tax Code to mean that a Form 1040 filed after the IRS had created a substitute return and assessed the tax liability was not a "return" for purposes of discharge of the tax liability "under the facts and circumstances of this case"); *Mendes v. C.I.R.*, 121 T.C. 308, 331 (2003) (fact that return was filed more than eight years after the due date and two years after IRS notice of deficiency were proper considerations under *Beard* test, establishing return was not an "honest and reasonable attempt" to comply with the tax laws) (Vasquez, J., concurring). The Fourth Circuit in *Moroney* stated the principle succinctly: "to belatedly accept responsibility for one's tax liabilities, only when the IRS has left one no other choice, is hardly how honest and reasonable taxpayers attempt to comply with the tax code." *Moroney v. United States,* 352 F.3d 902, 906 (4th Cir. 2003); *see also In re Mallo*, No. 10-12979 MER, 2013 WL 49774 (Bankr. D. Colo. Jan. 3, 2013) *aff'd,* 498 B.R. 268 (D. Colo. 2013) (late filed returns did "not represent an honest and reasonable attempt to comply with tax law[; r]ather, they are belated attempts to create a record of compliance when none really exists, long after the IRS had filed substitutes for returns and provided notices of deficiency"). Or, as Judge Posner stated in Payne, "a purported return that does not satisfy" the honest and reasonable attempt requirement "does not play the role that a tax return is intended to play in… our federal tax system[] of self-assessment… while a 'return' that satisfies the [other] three conditions comports

11

with the literal meaning of the word, it does not comport with the functional meaning." *In re Payne*, 431 F.3d at 1057.

Courts taking the minority view have opined that the language of the hanging paragraph, particularly when read together with section 523(a)(B)(i) and (ii), indicates that timeliness of the return has no bearing on whether it meets the definition of "return." *Colsen,* 446 F.3d at 840. *Martin I,* 483 B.R. at 641.  According to interpretation of the bankruptcy court in *Martin I*, section 523(a)(1)(B)(ii) already addresses late filing of a return, making any consideration of timeliness superfluous to the definition of "return" itself, and therefore irrelevant to section 523(a)(B)(i). *Martin I,* 483 B.R. at 641.  The Court cannot agree with this interpretation of the statutory language.

First, the hanging paragraph added by BAPCPA makes clear that a "return" must satisfy the requirements of non-bankruptcy law.  Thus, the hanging paragraph in no way excludes the *Beard* factors, but indeed incorporates them since they are relevant, long-standing non-bankruptcy law on the meaning of return.  Moreover, there is no inconsistency between: (1) taking late-filing, and the reasons therefore, into account in deciding whether a document is a "return" at all for purposes of *Beard*, and (2) barring discharge of returns that are filed untimely and "after two years before the date of the filing of the petition."  It is easy to imagine a scenario under which a late-filed document meets the *Beard* definition of "return," *i.e.,* is filed late but in good faith, yet is still barred from discharge under section 523(a)(1)(B)(ii).  *Cf. Payne*, 431 F.3d at 1058 (the Beard test considers whether late return is "a *reasonable* endeavor to satisfy the taxpayer's obligations, as it might be if the taxpayer had tried to file a timely return but had failed to do so because of an error by the Postal Service") (emphasis in original).  Likewise, the opposing scenario – a return filed late but *within* the two years prior to the filing of the petition – would mean that discharge was not necessarily barred by section 523(a)(1)(B)(ii), unless the "return" failed the *Beard* test (as here). *Id.* at 1058 (document purporting to be a return, with all the data necessary and signed under penalty of perjury is not an honest and reasonable attempt if deliberately mailed to Arlington National Cemetery instead of IRS).  Finally, the fact that the second sentence of the hanging paragraph allows a return prepared by the IRS with the taxpayer's cooperation (under section 6020(a)) to be considered a

12

"return" for purposes of section 523(a), but not a return prepared by the IRS without such cooperation (under section 6020(b)) is, again, completely consistent with concerns set forth in the *Beard* test: whether the taxpayer made an "honest and reasonable attempt to comply" with the tax laws. Thus, there is nothing about taking timeliness and the reasons therefore into account, per *Beard*, that renders any of the language in the hanging paragraph or section 523(a)(1)(B)(ii) superfluous or inoperable.

In examining the holdings of the various courts, the reasoning therefore, and the language of section 523(a)(1)(B) itself, the Court finds that the majority position on this issue is the correct one. Since the hanging paragraph in Section 523(a)(1) does not completely define the term "return," it is appropriate for the Court to look to long-established authority concerning the definition of "return" under "applicable nonbankruptcy law," primarily the Tax Code.[10] Similarly, the hanging paragraph does nothing to undermine the four-factor test or years of jurisprudence following *Beard.* Consistent with the Tax Code's standards for a "return," as stated in *Beard* and the Ninth Circuit's decision in *Hatton,* the meaning of "return" must take into account the late-filers' evidence of a good faith attempt to comply with the tax laws. Where, as here, the taxpayer and bankruptcy debtor fails to comply with self-assessment and payment of tax obligations until years after the IRS has initiated action, created a substitute return, assessed and begun collection proceedings, the Court simply cannot find his conduct to be "an honest and reasonable attempt to comply with the tax law." This approach does not mean, as Debtor argues, that the "honest and reasonable attempt" factor creates a *per se* rule barring taxpayers from filing returns once the IRS has created a substitute return. To the contrary, this prong of the test is meant to consider each case on its particular facts, an approach which necessarily precludes a *per se* determination.

---

[10] The Ninth Circuit has previously considered and rejected the argument that the term "return" must have the same meaning in all parts of the Tax Code, instead acknowledging "the possibility that the same word could have a different meaning in different parts of the code," and concluding that "where, as here, a word could well have a different meaning in different statutory contexts, a purpose-oriented approach should be used when interpreting the meaning of the word as it is used in different sections of the Code." *Conforte v. Commissioner,* 692 F.2d 587, 591 (9th Cir. 1982); *see also Payne,* 431 F.3d at 1058-59 ("return" can "mean two different things in differentparts of the federal tax law"). Debtor's arguments on this point are unpersuasive.

In sum, Debtor's belated Form 1040 for Tax Year 2001 does not meet the definition "return" under established tax law. It follows that the tax liability assessed by the IRS for Tax Year 2001 is a "tax…with respect to which a return…was not filed or given," and is not dischargeable in bankruptcy pursuant to section 523(a)(1)(B)(i).[11]

### III. CONCLUSION

Consequently, the Court **REVERSES** the Bankruptcy Court's Order that the subjected tax liability was excepted from discharge under 11 U.S.C. § 523(a)(1)(B)(i), and granting summary judgment in favor of Debtor.

In addition, Debtor's Motion to Strike Defendant's Notice (Dkt. No. 20) is **DENIED**. The IRS's Notice of Recent Decision (Dkt. No. 19) was not filed improperly.

This matter is **REMANDED** to the Bankruptcy Court for proceedings consistent with this Decision, including entry of judgment in favor of IRS.

**IT IS SO ORDERED**.

Date:   April 29, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[11] Because the Court finds that Debtor's late-filed Form 1040 does not make his previously assessed tax liability dischargeable, the Court need not reach IRS's alternative argument that the tax assessment records a "debt" for the assessed taxes that cannot be discharged pursuant to 11 U.S.C. sections 523(a)(1)(B)(i) and (19). However, the Court notes that, post-BAPCPA, courts have reached differing decisions on the viability of this argument as well. *Cf. In re Martin*, 500 B.R. 1, 7 (D. Colo. 2013) (rejecting); *In re Mallo*, No. 10-12979 MER, 2013 WL 49774 (Bankr. D. Colo. Jan. 3, 2013) *aff'd,* 498 B.R. 268 (D. Colo. 2013) (late returns did not satisfy "return" definition of section 523(a)(19)); *In re Smythe*, 10-49799, 2012 WL 843435 (Bankr. W.D. Wash. Mar. 12, 2012) (upholding).